United States District Court
Southern District of Texas
**ENTERED**
May 09, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | CRIMINAL NUMBER H-19-816-01 |
| v. | § | (CIVIL ACTION NO. H-24-0121) |
| | § | |
| SYE NEWTON, | § | |
| | § | |
| Defendant/Petitioner. | § | |

## MEMORANDUM OPINION AND ORDER

Sye Newton ("Petitioner") was convicted of bank robbery and brandishing a firearm in furtherance of a crime of violence in this court.[1] The court sentenced Petitioner to 360 months in custody.[2] Pending before the court are Petitioner's Motion for Evidentiary Hearing in Support of Alibi Employment Records ("Motion for Hearing Re Alibi") (Docket Entry No. 187), Petitioner's Title 28 U.S.C. § 2255 Writ of Habeas Corpus ("Petitioner's § 2255 Motion") (Docket Entry No. 191), and the United States' Answer to 28 U.S.C. § 2255 Motion and Motion for Summary Judgment ("Government's MSJ") (Docket

---

[1] Indictment, Docket Entry No. 1, pp. 1-2; Verdict of the Jury Form ("Verdict"), Docket Entry No. 78, pp. 1-2. For purposes of identificati Verdict on all page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing ("ECF") system.

[2] Judgment in a Criminal Case, Docket Entry No. 128, p. 2.

Entry No. 204).³ For the reasons stated below, Petitioner's Motion for Hearing Re Alibi and Petitioner's § 2255 Motion will be denied, the Government's MSJ will be granted, and the accompanying civil action will be dismissed with prejudice.

## I. Background

### A. Petitioner's Indictment, Trial, and Sentencing

Petitioner was indicted on November 6, 2019, on one count of bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d) and one count of brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii).⁴ The Indictment alleged that on March 25, 2019, Petitioner took $15,742 from an IBC Bank in Houston, Texas, and that Petitioner brandished a firearm in the process.⁵

At trial witnesses testified about a March 25, 2019, robbery at an IBC Bank at 8203 South Kirkwood Drive in Houston, Texas.⁶ The robber — wearing a hijab — had a gun in his hand.⁷ The robber yelled for bank patrons to get down and obtained money from each of

---

³The court hereafter refers to the United States as "the Government."

⁴Indictment, Docket Entry No. 1, pp. 1-2.

⁵Id.

⁶Transcript of Jury Trial Proceedings — Day 1 of Two ("Day 1 Trial Transcript"), Docket Entry No. 168, p. 78 lines 9-10, p. 80 lines 17-25, p. 82 lines 18-25, p. 86 lines 6-25, p. 91 lines 9-14, p. 118 lines 21-22, p. 119 lines 18-21, p. 126 lines 8-23, p. 131 lines 18-19, p. 132 lines 6-17, p. 136 lines 4-25, p. 137 lines 1-8.

⁷Id. at 86 lines 14-20; p. 124 lines 11-12; p. 134 lines 10-18; Government's Exhibit 4, Docket Entry No. 136-2.

the tellers at gunpoint.[8] Witnesses identified the robber as a male based on his voice and face.[9]

After the robber left the bank, one patron went outside, saw the robber, and began following him by car.[10] The patron testified that he saw the robber take off his disguise and throw it in a dumpster.[11] The patron saw the robber get into a car with a female.[12] The patron followed them to a Valero gas station and took a photo of the car — a Ford Escape with license plate FCP 0317.[13] After some further pursuit, the patron returned to the Valero and showed the photo of the car to a nearby officer.[14]

Two days later a Houston Police Department ("HPD") patrol officer responded to a nearby complaint about an illegally parked car — a Ford Escape with license plate FCP 0317.[15] The officer ran

---

[8] Day 1 Trial Transcript, Docket Entry No. 168, p. 86 lines 23-25, p. 126 lines 4-23, p. 127 lines 8-11, p. 136 lines 20-25, p. 137 lines 1-8; Government's Exhibit 4, Docket Entry No. 136-2.

[9] Day 1 Trial Transcript, Docket Entry No. 168, p. 88 lines 17-18, p. 126 lines 1-3. Although the robber was wearing a hijab, one witness testified that she got a closeup view of the robber's face when he stooped to pick up his glasses. Id. at 88 lines 18-25, p. 89 lines 15-21, 25, p. 90 lines 1-6.

[10] Id. at 139 lines 2-3, 18-20, p. 142 lines 5-7.

[11] Id. at 142 lines 9-10.

[12] Id. at 144 lines 5-14.

[13] Id. at 148 lines 24-25, p. 148 lines 4-9, p. 149 lines 21-25, p. 150 lines 1, 14-15; Government's Exhibit 5, Docket Entry No. 136-3.

[14] Day 1 Trial Transcript, Docket Entry No. 168, p. 154 lines 10-25, p. 155 lines 1-2.

[15] Id. at 171 lines 13-22, p. 173 lines 3-8.

the plate, which brought up a suspicious hit and a case number.[16] The officer had the vehicle towed to a secure evidence lot.[17]

After obtaining a search warrant, an HPD investigator examined the car and found numerous personal items inside, including a consular records request with Petitioner's name on it and a case of 9-millimeter ammunition.[18] The officer collected fingerprints from various parts of the car, some of which matched Petitioner's fingerprints.[19]

After Petitioner was located and arrested in San Antonio, HPD robbery detectives interviewed Petitioner on August 12, 2019.[20] During the interview, Petitioner confessed to committing the robbery.[21] In the process Petitioner mentioned details about the

---

[16]Id. at 174 lines 1-4.

[17]Id. at 175 lines 12-20.

[18]Id. at 180 lines 8-10, 22-25, p. 181 lines 1-2; Consular Vital Record Search Request, Docket Entry No. 137; Government's Exhibit 12, Docket Entry No. 137-2; Government's Exhibit 13, Docket Entry No. 137-3.

[19]Day 1 Trial Transcript, Docket Entry No. 168, p. 192 lines 20-24, p. 193 lines 19-25, p. 194 lines 1-8, p. 217 lines 13-25, p. 218 lines 1-12; Government's Exhibit 15, Docket Entry No. 137-4; Government's Exhibit 16, Docket Entry No. 137-5.

[20]Transcript of Jury Trial Proceedings — Day 2 of Two, Docket Entry No. 169, p. 6 lines 2-5 and lines 13-16, p. 36 lines 19-20, p. 37 lines 24-25, p. 38 lines 1-6; Sye Newton Statement, Government's Exhibit 18, Docket Entry No. 138.

[21]Sye Newton Statement, Government's Exhibit 18, 1:09:46-1:11:01 (time stamped 3:10:26 p.m.-3:11:41 p.m.).

robbery that the detectives had not disclosed to him, including the amount of money stolen.[22]

The jury found Petitioner guilty on both counts.[23] The court sentenced Petitioner to 276 months in custody as to Count One and 84 months as to Count Two, to run consecutively for a total of 360 months in custody.[24]

B.  **Petitioner's Appeal**

Petitioner appealed his convictions to the Fifth Circuit. Petitioner argued that the evidence in the car should have been suppressed because the search warrant was insufficient and that his confession was the product of police coercion. United States v. Newton, No. 22-20375, 2023 WL 8074220, at *1 (5th Cir. Nov. 21, 2023) (per curiam). The Fifth Circuit rejected both arguments and affirmed Petitioner's convictions. Id. at *1-2.

C.  **The Parties' Pending Motions**

On November 3, 2023, Petitioner filed his Motion for Hearing Re Alibi.[25] Petitioner argues that he has new evidence to show that he was in El Paso on the date of the robbery.[26] Petitioner states

---

[22]Id. at 1:18:05-1:18:35 (time stamped 3:18:45 p.m. - 4:19:15 p.m.).

[23]Verdict, Docket Entry No. 78, pp. 1-2.

[24]Judgment in a Criminal Case, Docket Entry No. 128, p. 2.

[25]Motion for Hearing Re Alibi, Docket Entry No. 187.

[26]Affidavit of Sye Newton in Support of Motion for Evidentiary Hearing Based on Alibi Employment Record, Docket Entry No. 187-1, p. 2 ¶ 5, pp. 3-4 ¶¶ 11-14.

-5-

that he was working for a temp agency "Family Endeavors/Intrepid Staffing Services," under the alias Micah Newton, Jr.[27] In support Petitioner attaches what purports to be an email from Endeavors confirming that they employed someone under the name of Micah Newton from September 25, 2018, through January 1, 2020, on an "as needed" basis, but the email does not specify the location of Micah Newton's job or state whether he worked on March 25, 2019.[28] Petitioner also filed an "Admission of Micah Newton," which states:

> 1. I plead the fifth amendment as to having any knowledge that Sye Newton used or may have used my personal information including my name, Social Security number, date of birth in the month of September 2018.
>
> 2. I do admit that I never suubmitted any employment forms to "Endeavors" ([or] any other temp agencies in the San Antonio, TX area) to work with FEMA companies in the months of September and October 2018.
>
> 3. I admit that I have never been employed as a direct care worker or in any capacity for temp agencies employed by FEMA camps in the year 2018 through 2019 or any other year.
>
> 4. I admit that it has come to my attention Sye Newton may have used my personal information to obtain employment by said agencies during the months of September through October 2018.[29]

Petitioner's § 2255 Motion was filed on January 11, 2024.[30] Petitioner argues (1) that Petitioner's trial counsel Cordt Akers

---

[27]Id. at 2 ¶¶ 4-5, pp. 3-4 ¶ 11.

[28]Correspondence Re: employment, reference check, Docket Entry No. 187-1, p. 6.

[29]Admission of Micah Newton, Docket Entry No. 186.

[30]Petitioner's § 2255 Motion, Docket Entry No. 191.

was ineffective in failing to investigate and present his El Paso alibi at trial, (2) that Akers was ineffective in failing to investigate and develop an issue of juror misconduct in the courthouse cafeteria, (3) that Akers was ineffective in advising Petitioner not to testify at trial, (4) that Petitioner is actually innocent based on his new alibi evidence, and (5) that his sentence improperly considered prior convictions that are currently being collaterally attacked.[31]

The Government filed a motion to compel Akers to provide an affidavit addressing Petitioner's allegations of ineffective assistance of counsel.[32] The court granted the motion,[33] and Akers provided an affidavit stating:

> I. General Response
>
> At no point in the proceeding, trial or pretrial, did counsel go against Mr. Newton's wishes or refuse to do anything he requested. In the multiple meetings with Newton, strategy was always discussed along with the pros and cons of each course of action. The only strategies that caused significant disagreement between counsel and defendant were (1) Mr. Newton's decision to file multiple pro se lawsuits against Vanessa Gilmore, the judge presiding over his trial, and both prosecutors, and (2) Mr. Newton's decision on multiple occasions to proceed pro se. In these discussions, counsel advised defendant of the dangers of doing so, and defendant each time changed his mind.

---

[31] Id. at 2, 4.

[32] United States' Motion for an Order Directing Counsel to Provide an Affidavit and Motion to Amend Scheduling Order, Docket Entry No. 198, p. 1.

[33] Order Directing Counsel to Provide an Affidavit and Amending Scheduling Order, Docket Entry No. 199, p. 2.

Multiple times during the trial, Newton expressed that he had "never had a real trial lawyer represent him before" and thanked counsel profusely for his representation. He wrote counsel multiple notes thanking him after cross examinations and closing argument, which counsel kept. See Exhibit 1. Mr. Newton was a[t] no point upset with counsel's performance or strategic decisions until the verdict was read.

## II. Alibi Defense

The evidence against Mr. Newton was strong. A black male dressed in a hijab robbed a bank at gunpoint. A witness identified the license plate of the vehicle in which the disguised bank robber escaped. This vehicle was found abandoned blocks away from the bank. It contained, among other things, Sye Newton's fingerprints. It also contained several homemade board games, which Newton claimed ownership of to the police, several pieces of his identifying information, and several lyrics, poems and writings. Mr. Newton likewise claimed ownership and authorship of these notes and lyrics to law enforcement. At least one of these writings contained rap lyrics about disguising in a hijab to rob banks — the very same modus operandi of the individual who robbed this bank.

When Mr. Newton was arrested some time later, he waived his Miranda rights and provide[d] law enforcement with full confession that lasted several hours and included information only someone involved with the robbery would know, such as the exact amount of money stolen.

Upon counsel being appointed and meeting defendant after the public defender was removed, Mr. Newton told defense counsel that he was not robbing the bank, but was in Las Vegas staying with his mother. Counsel called his mother and inquired, and was told that she would have to investigate the dates based on which 'fire tonics' she had made during that time, because she could remember the type of potion she was making when he was there. After a number of conversations with defendant's mother yielded no fruit, Newton explained to counsel that his claim that he was in Las Vegas was false, and that he made that claim because he did not yet trust defense counsel.

Counsel reviewed multiple notes of conversations with prior counsel Dennis Hester, wherein he spoke with Mr. Newton, Alisa Pearson, and others who claimed that

-8-

Newton was in fact in San Antonio when the robbery was committed.

Newton then told defense counsel that he was near the robbery, but was not the bank robber nor was he in the getaway car. He stated that there was some sort of agreement between his girlfriend, Alisa Pearson, the bank manager, and her ex-boyfriend that resulted in the robbing of the bank. He was not involved, but he was present for conversations about it and witnessed it.

Later, Newton told defense counsel that he was actually somewhere else. He stated that he was in El Paso working for an unnamed company under his brother's name, Micah Newton. Counsel responded that [this alibi] would take three factors to present as a defense: (1) Micah Newton's cooperation and statement that he was not employed there, (2) records from the company showing Micah was employed there, and (3) employment records that matched that Newton was in fact in El Paso at the exact day of the robbery.

Counsel contacted Micah Newton, who stated he would check into the matter. He then refused to return phone calls. Counsel strategically made the decision not to subpoena Micah Newton as a witness when he was possibly adverse to defendant and would not testify voluntarily. Counsel then discussed with defendant that if a Rule 16 subpoena was filed and no helpful records were returned, as defense counsel suspected, then the Government would have proof that he was not where he claims he was, in the event defendant elected to testify at trial - a decision defendant would not discuss with counsel until trial commenced.

When trial neared, counsel asked defendant if he wished counsel to file subpoenas and continue investigating the El Paso alibi or if his energies should be spent preparing for trial and if the El Paso alibi was a red herring. Defendant responded that counsel would not find any evidence regarding his being in El Paso, that it was a waste of time, and counsel should focus on preparing cross examinations. Counsel took this to mean that Newton was abandoning his claim that he was living in El Paso at the time of the robbery as he had abandoned his other claims of separate alibis with counsel.

Counsel was satisfied that a strategy presenting any sort of alibi defense at trial would cause an instant loss of credibility with the jury. It was decided, and

-9-

agreed-on by defendant, that focusing as much as possible on a false confession and holes in the investigation was defendant's best possible trial strategy given the mounting evidence against him.

### III. Defendant's Testimony at Trial

Defendant claims that defense counsel was deficient when he counseled Newton not to testify at trial.

Mr. Newton had several convictions for assaults, firearms offenses, and robbery, some of which could have been admissible against him at trial – one of which included holding another inmate hostage while in custody in Delaware. Likewise, the Government had not placed the rap lyrics describing the offense into evidence. It was discussed between counsel and defendant that those exhibits may become admissible in cross examination and be detrimental to his defense. Likewise, defendant had filed several pro se motions for release from detention, none of which included any alibi but instead focused on defendant's pending patents and board game development. This too could be used very well against defendant on cross examination. Finally, there were enough pieces of testimony and evidence that were not played, discussed with, or shown to the jury that defense counsel strategically believed it would be smarter to rest behind the government and focus on the burden of proof rather than give them an opportunity for any rebuttal.

It was decided, very mutually with defendant, that defendant should not elect to testify in his own behalf as part of trial strategy and allow the jury to focus on the possibility of reasonable doubt. Defendant agreed.

### IV. Failure to Investigate Jury Misconduct

Defendant claims that counsel failed to investigate jury misconduct. The information imparted to defense counsel regarding the alleged jury misconduct was that Mr. Newton's family overheard a juror in the cafeteria say the phrase "these young people think they slick" without any context. Mr. Newton claimed to defense counsel that this was (1) age discrimination, and (2) improper deliberations in his case before deliberations began.

Counsel did not, and does not, believe that this statement amounts to jury misconduct. The jurors were not observed to be discussing the case, the evidence, or

-10-

the parties. The "young people think they slick" comment, if made, supposedly overheard by Mr. Newton's family members could have very well been talking about other matters with no context or relevance to the case. Counsel believed and does believe that presenting that as a motion for new trial or as grounds for examining the jury for possible misconduct would amount to a fraud on the Court and a violation of counsel's duty of candor to the Court.

When counsel imparted this to defendant, he elected to represent himself and filed his own motions, as he had done so throughout representation. He was then sentenced to 360 months' incarceration.[34]

The Government's MSJ was filed on April 10, 2024.[35] The Government argues that Petitioner's claims are inadequately pled, procedurally defaulted, and frivolous.[36] On May 7, 2024, Petitioner filed Sye Newton's Reply to United States Answer to 28 U.S.C. § 2255 Motion and Motion for Summary Judgment (Docket Entry No. 206).

## II. Legal Standard

### A. Title 28 U.S.C. § 2255

28 U.S.C. § 2255(a) states that a prisoner sentenced by a federal court may move that court "to vacate, set aside or correct the sentence" "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." "A defendant can challenge a final conviction, but only on issues of constitutional or jurisdictional magnitude." United States v. Willis, 273 F.3d

---

[34]Affidavit of Cordt Akers, Docket Entry No. 200, pp. 2-8.

[35]Government's MSJ, Docket Entry No. 204.

[36]Id. at 14.

592, 595 (5th Cir. 2001). "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 102 S. Ct. 1584, 1593 (1982).

The court "may not consider an issue disposed of in [the defendant's] previous appeal at the § 2255 stage." United States v. Goudeau, 512 F. App'x 390, 393 (5th Cir. 2013) (per curiam). Similarly, a defendant generally may not raise claims in a § 2255 motion that he has procedurally defaulted. United States v. Vargas-Soto, 35 F.4th 979, 993 (5th Cir. 2022). "In general, [i]t is well settled that where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a § 2255 motion only if the petitioner can first demonstrate either (1) cause and prejudice, or (2) that he is 'actually innocent' of the crime for which he was convicted." United States v. Torres, 163 F.3d 909, 911 (5th Cir. 1999) (internal quotation marks omitted). To show cause, "the movant 'must show that some objective factor external to the defense impeded counsel's efforts to comply with the [relevant] procedural rule.'" Vargas-Soto, 35 F.4th at 993 (quoting Davila v. Davis, 137 S. Ct. 2058, 2065 (2017)).

A court must grant an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "When facts are at issue in a § 2255 proceeding,
-12-

a hearing is required if (1) the record, as supplemented by the trial court's personal knowledge or recollection, does not conclusively negate the facts alleged in support of the claim for § 2255 relief, and (2) the movant would be entitled to postconviction relief as a legal matter if his factual allegations are true." United States v. Anderson, 832 F. App'x 284, 287 (5th Cir. 2020) (per curiam). A petitioner's "conclusory assertions do not support the request for an evidentiary hearing." United States v. Auten, 632 F.2d 478, 480 (5th Cir. 1980). Instead, a petitioner must produce "independent indicia of the likely merit of her allegations, typically in the form of one or more affidavits from reliable third parties." United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998); United States v. Edwards, 442 F.3d 258, 264 (5th Cir. 2006).

### B. Ineffective Assistance of Counsel

"[A] claim for ineffective assistance of counsel is properly made in a § 2255 motion because it raises an issue of constitutional magnitude and, as a general rule, cannot be raised on direct appeal." United States v. Conley, 349 F.3d 837, 839 n.1 (5th Cir. 2003) (internal quotation marks omitted). To prevail on an ineffective assistance of counsel claim, a convicted defendant must show (1) that defense counsel's performance was deficient and (2) that the deficient performance prejudiced the defendant. Strickland v. Washington, 104 S. Ct. 2052, 2064 (1984).

Performance is deficient if the defendant's lawyer "made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 2065. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 2066.

To show prejudice a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 2068. For a trial error, the defendant must show that counsel's errors were "'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington v. Richter, 131 S. Ct. 770, 787-88 (2011).

### III. Analysis

**A. Akers' Investigation of Petitioner's El Paso Alibi**

Petitioner argues that his convictions must be vacated because Akers failed to investigate and present his El Paso alibi at trial.[37] "[T]he failure to investigate everyone whose name happens to be mentioned by the defendant does not suggest ineffective assistance." United States v. Cockrell, 720 F.2d 1423, 1428 (5th

---

[37]Petitioner's § 2255 Motion, Docket Entry No. 191, pp. 2-3.

Cir. 1983). "[T]he presentation of testimonial evidence is a matter of trial strategy[.]" Schwander v. Blackburn, 750 F.2d 494, 500 (5th Cir. 1985).

Although Petitioner attaches a statement by Micah Newton and a purported record of Petitioner's employment start and end dates, Petitioner presents no evidence (other than his own affidavit) that he was working in El Paso on the specific day of the robbery. Akers states that Petitioner presented multiple, contradictory alibis to him and that Petitioner ultimately agreed that pursuing the El Paso alibi was a waste of time. Petitioner's claim that Akers was deficient in failing to investigate and present his El Paso alibi therefore fails. Moreover, Petitioner cannot show prejudice. The evidence against Petitioner at trial was overwhelming. Not only did Petitioner confess to committing the robbery, but in doing so he mentioned details of the robbery that the police had not disclosed to him. Because Petitioner can show neither deficient performance nor prejudice, his ineffective assistance of counsel claim fails.

## B. Akers' Investigation of Alleged Juror Misconduct

Petitioner argues that Akers was ineffective in failing to investigate and seek a new trial based on juror misconduct in the courtroom cafeteria.[38] Although Akers declined to present the juror's alleged statement to the court, Petitioner previously filed

---

[38] Id. at 2.

motions for a new trial and for acquittal based on the statement.[39] At sentencing, the court considered the juror's alleged statement and rejected Petitioner's request for a new trial or evidentiary hearing on the matter.[40]

Given the vague nature of the statement and the limited circumstances in which juror testimony may be considered, it was reasonable for Akers to not pursue the matter. Moreover, because there is no indication that the statement was about the case or that it affected the jury's deliberations or verdict, Petitioner cannot show that Akers' decision prejudiced him. Because Petitioner can show neither deficient performance nor prejudice, his ineffective assistance of counsel claim fails.

### C. Akers' Advice That Petitioner Not Testify at Trial

Petitioner argues that Akers was ineffective in advising him to not testify at trial.[41] But as Akers and the Government point out, doing so would have opened the door for the Government to introduce portions of Petitioner's prejudicial criminal history and potentially other evidence — including written lyrics found in the car about disguising in a hijab to rob banks. Petitioner therefore cannot show that Akers' advice not to testify was deficient or that

---

[39] Rule 33 Motion for New Trial, Docket Entry No. 89; [Motion for] Evidentiary Hearing in Support of Motion for Acquittal or Alternatively New Trial, Docket Entry No. 90.

[40] Sentencing Transcript, Docket Entry No. 164, p. 3 lines 12-25, p. 4 lines 1-9.

[41] Petitioner's § 2255 Motion, Docket Entry No. 191, p. 4.

-16-

it prejudiced Petitioner. Petitioner's ineffective assistance of counsel claim therefore fails.

## D. Petitioner's Actual Innocence Claim

In support of Petitioner's Motion for Hearing Re Alibi, Petitioner presents new evidence that he argues shows that he was in El Paso on the date of the robbery. In Petitioner's § 2255 Motion, Petitioner argues that his new alibi evidence shows that he is actually innocent of the robbery.

Courts do "not consider habeas relief based on 'freestanding claims of actual innocence.'" Floyd v. Vannoy, 894 F.3d 143, 155 (5th Cir. 2018) (quoting In re Swearingen, 556 F.3d 344, 348 (5th Cir. 2009)). "Instead, a successful actual-innocence claim provides a 'gateway' for the petitioner to proceed on the merits" of an error that would otherwise be time barred. Id. (quoting House v. Bell, 126 S. Ct. 2064, 2066 (2006)). As explained above, Petitioner's claim that Akers was ineffective for not investigating the El Paso alibi fails. Petitioner does not argue that any other error in the prosecution or trial caused the unavailability of this new evidence.

Construing Petitioner's Motion for Hearing Re Alibi as a motion for a new trial under Federal Rule of Criminal Procedure 33, the motion fails on the merits because the evidence is weak,[42]

---

[42] The evidence, read liberally, shows only start and end dates of Petitioner's purported employment, does not specify the location of said employment, and gives no indication that there is more detailed documentation available.

-17-

inconsistent with the other alibis Petitioner presented to Akers, and conclusively refuted by the overwhelming evidence presented at trial.[43]

Petitioner's Motion for Hearing Re Alibi will therefore be denied, and Petitioner's actual innocence claim fails.

### E. Petitioner's Sentencing as a Career Offender

Petitioner argues that his sentence must be corrected because two "underlying state convictions relied upon by this court for sentencing enhancement are challenged as unconstitutional[.]"[44] Petitioner states that these convictions are being collaterally attacked in the Middle District of Pennsylvania, but he does not identify the convictions.[45] As the Government suggests, Petitioner appears to be renewing a challenge he previously made to using the convictions referenced in ¶¶ 34-36 of the PSR to apply the career offender guideline.[46] This claim was raised in this court at sentencing and could have been pursued in Petitioner's direct appeal. Petitioner has therefore procedurally defaulted this claim.

---

[43]Petitioner's alibi evidence, if credible, would at most show the start and end date of Petitioner's employment — not that Petitioner was working in El Paso on the exact date of the robbery. Moreover, the employment date range cannot be completely accurate given that Petitioner was arrested in this case months before the supposed end date.

[44]Petitioner's § 2255 Motion, Docket Entry No. 191, p. 1.

[45]Id.

[46]Government's MSJ, Docket Entry No. 204, p. 12; Affidavit in Support of Objection to Presentence Investigation Report, Docket Entry No. 123, pp. 2-3.

Moreover, Petitioner has not cited cases holding that a prior conviction may not be considered in guidelines calculation merely because a collateral attack is pending against the prior conviction. Petitioner's challenge to his sentence therefore fails.

## IV. Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings states that a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability will not issue unless the applicant makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires an applicant to demonstrate "that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Tennard v. Dretke, 124 S. Ct. 2562, 2565 (2004) (quoting Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)). Under that controlling standard this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 123 S. Ct. 1029, 1039 (2003) (internal quotation marks omitted).

A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam). The court concludes that reasonable jurists could not

find any of Petitioner's claims meritorious, so a certificate of appealability will be denied.

## V. Conclusion and Order

Petitioner's new evidence in support of his El Paso alibi does not warrant an evidentiary hearing or a new trial. Petitioner's Motion for Evidentiary Hearing in Support of Alibi Employment Records (Docket Entry No. 187) is therefore **DENIED**. As to Petitioner's § 2255 Motion, Petitioner has failed to establish or has procedurally defaulted each of his claims challenging his conviction and sentence. Therefore, Petitioner's Title 28 U.S.C. § 2255 Writ of Habeas Corpus (Docket Entry No. 191) is **DENIED**, the United States' Motion for Summary Judgment (Docket Entry No. 204) is **GRANTED**, and the accompanying civil action (Civil Action No. H-24-0121) will be dismissed with prejudice. Because the record conclusively shows that Petitioner is not entitled to any relief, the court need not grant an evidentiary hearing. Because reasonable jurists could not find any of Petitioner's asserted claims meritorious, a certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this the 9th day of May, 2024.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE